## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Steven F. Meldahl,                                  Bankruptcy File No. 12-46965
                                                              Chapter 11

    Debtor.

---

## LOCAL TAX AUTHORITY'S OBJECTION TO DEBTOR'S MOTION FOR AN ORDER DETERMINING VALUATION OF REAL PROPERTY AND MEMORANDUM IN SUPPORT OF OBJECTION

TO:    The entities specified in Local Rule 9013-3:

    The County of Hennepin in the State of Minnesota Objects to the Debtor's MOTION FOR ORDER DETERMINING VALUATION OF REAL PROPERTY.

    Hennepin County bases its Objection on the following grounds:

1. Hennepin County has secured claims for real estate taxes on 85 parcels located in Hennepin County;

2. Any determination of tax liability based on the value of real property already contested in the Minnesota Tax Court is barred by 11 U.S.C. § 505(a)(2)(A);

3. Any determination of tax liability based on the value of real property through assessment year 2011 (payable year 2012) is barred by 11 U.S.C. § 505(a)(2)(C);

4. This Court should abstain from making a determination of tax liability based on the value of real property, to the extent such a determination is not already barred under 11 U.S.C. § 505, pursuant to the Tax Injunction Act.

1

## MEMORANDUM

### I.    Introduction

Hennepin County has claims for real estate taxes on 85 parcels owned by the Debtor.  As of this date, Hennepin County has submitted property tax claims totaling $459,452.04 for these parcels.

Pursuant to 11 U.S.C. § 506, the Debtor asks this court to "determin[e] the value of the Debtor's real property and the liens against the property."  In support of his motion, Debtor attaches an exhibit containing "the Debtor's view as to the value of the properties" and wants this Court to both adopt his property values and only allow secured claims to the extent they do not exceed those values.

The Debtor states that "[o]ne of the reasons for filing the instant Chapter 11 case by the Debtor is the Debtor's inability to obtain a determination of the value of his real property in the Minnesota Tax Court."  But the Debtor admits that "[a]t the time of the filing of this case, the Debtor had pending in Minnesota Tax Court challenges to the tax assessed values on the Debtor's real properties."

The Minnesota Tax Court is a specialized bench and "the sole, exclusive, and final authority for the hearing and determination of all questions of law and fact arising under the tax laws of the state . . . in those cases that have been appealed to the Tax Court . . . ."  Minn. Stat. § 271.01 subd. 5.  Presently, the Debtor has three cases pending before the Minnesota Tax Court – one for taxes payable in 2010, one for taxes payable in 2011, and one for taxes payable in 2012.[1] Each of these court files challenges the assessed value of numerous properties.

---

[1] Each tax petition challenges one assessment date but may contain multiple parcels.  Minn. Stat. § 278.02.  A petitioner must pay a part of the challenged tax to proceed.  Minn. Stat. § 278.03.

Hennepin County objects to the Debtor's motion to the extent that any of its tax liens may be reduced. Hennepin County further objects to the Debtor's attempt to litigate the values of any Hennepin County properties in this proceeding.

## II.    Argument

The County's real estate taxes are a "perpetual lien" on real property and thus secured claims in this proceeding. Because this Court lacks jurisdiction to decide the Debtor's tax claims pursuant to 11 U.S.C. § 505(a), and because under the Tax Injunction Act the Minnesota Tax Court is the proper forum for the relief the Debtor seeks, his motion should be denied.

### A.    Hennepin County's Property Taxes Are Secured Claims

"Under our law, real estate taxes are assessed and enforced against the land itself." *Petition of S. R. A., Inc.*, 7 N.W.2d 484, 487 (Minn. 1942). These taxes "are not charges against the person owning the property or his estate" and "[p]roceedings to enforce them are strictly in rem." *Id.* Real property taxes are a "perpetual lien" "from the year in which the property is

---

"Failure to make payment of the amount required when due shall operate automatically to dismiss the petition and all proceedings thereunder unless the payment is waived by an order of the court permitting the petitioner to continue prosecution of the petition without payment." *Id.* However, "[t]he petition shall be automatically reinstated upon payment of the entire tax plus interest and penalty if the payment is made within one year of the dismissal." *Id.*

This is the status of each of the Debtor's Tax Court cases (*See* Aff. of Denise Lingwall):

| | |
|---|---|
| **Court File No. 27-CV-10-9125** (Assessment Year 2009/Payable Year 2010) | This petition included 63 Minneapolis parcels; 37 of those parcels were statutorily dismissed. |
| **Court File No. 27-CV-11-8510** (Assessment Year 2010/Payable Year 2011) | This petition included 62 Minneapolis parcels; 11 of those parcels were statutorily dismissed. |
| **Court File No. 27-CV-12-9125** (Assessment Year 2011/Payable Year 2012) | This petition included 58 Minneapolis parcels; 32 of those parcels were statutorily dismissed. |

3

assessed." Minn. Stat. § 272.31.[2]  In Minnesota, taxes payable in one year (payable year) are

based on a property's assessed value on January 2 of the preceding year (assessment year).

Minn. Stat. § 273.01 (properties to be "appraised each year with reference to their value on

January 2"); Minn. Stat. § 275.28 subd. 3 ("Taxes on real and personal property shall be related

to and designated on the property tax statement by the year in which they become payable but

the liens shall relate back to the assessment date preceding except as otherwise provided.");

*County of Ramsey v. Lincoln Fort Rd. Hous. Ltd. P'ship*, 494 N.W.2d 276, 281 (Minn. 1992)

("personal property taxes are 'due' from the date of assessment even though they are not payable

until the following year"); *In re Northbrook Partners LLP*, *245 B.R. 104, 108* (Bankr. D. Minn.

2000) ("the taxes then become due and payable in May of the following year"). [3]

Accordingly, Hennepin County's claims include taxes assessed through January 2, 2012

– prior to the petition date – and payable in 2013.  The amount of the taxes payable in 2013 for

each parcel is estimated, 11 U.S.C. § 502(c), and amended claims will be filed as necessary.

Because these pre-petition claims are for property taxes, which are "perpetual liens," they are

secured claims.  11 U.S.C. § 506(a)(1).

---

[2] Similarly, special assessments levied by the City of Minneapolis on these 85 parcels are liens
upon each parcel.  *See* Minn. Stat. §§ 272.33, 429.061 subd. 2; *In re Sheldahl, Inc.*, 298 B.R. 874
(Bankr. D. Minn. 2003).  These special assessments are certified to the County Auditor for
inclusion on property tax bills.  Minn. Stat. § 429.061 subd. 3.  Some of the City's special
assessments are included in Hennepin County's 85 claims, and Hennepin County will amend its
claims to include any special assessments certified pre-petition but not yet added to a parcel's
property tax bill by the petition date.

[3] One Bankruptcy Court opinion in this district seems to mistakenly suggest that taxes payable in
a year are assessed in January 2 of that same year, but when referencing a particular year, the
opinion does not specifically state whether it is referring to an assessment year or payable year.
*In re Brandt*, No. 6-87-478, 1989 WL 109696 (Bankr. D. Minn. Sept. 22, 1989).

**B.**    *In Re Northbrook Partners LLP* **Addressed These Very Issues**

In *Northbrook*, a debtor asked this Court to determine the value of five parcels over multiple assessment years. *In re Northbrook Partners LLP*, 245 B.R. 104, 108-110 (Bankr. D. Minn. 2000). Because "the Debtor really is seeking declaratory relief-an adjudication that the taxes chargeable against its property were not as large as the County had assessed," the Court applied the Tax Injunction Act to avoid interfering with state taxes. *Id.* at 115. The Court found the Act barred any decision of property values in a Chapter 11 proceeding, both as to parcels in petitions concurrently pending before the Minnesota Tax Court, and to time-barred property tax challenges. *Id.* at 116, 121-22.

Applying 11 U.S.C. § 505, the Court analyzed its ability to decide the values of parcels that were already decided as a result of tax petitions, as opposed to those pending in that court. *Id.* at 111-14 (because 11 U.S.C. § 505(a)(2)(C) did not yet exist, the Court applied 11 U.S.C. § 505(a)(2)(A), which only eliminated jurisdiction over adjudicated liabilities) (holding that tax petitions which were stipulated or statutorily dismissed were "adjudicated" under § 505(a)(2)(A)). The Court looked to the abstention doctrine to and determined it should not decide any values of properties that could have been decided in the Tax Court. *Id.* at 114-21. In that analysis, the Court recognized the different roles played by the federal Bankruptcy Court and the Minnesota Tax Court:

> The matrix of considerations for ascertaining "market value" under Minn. Stat. § 273.11 is not the same as that under § 506(a), or under provisions of the Bankruptcy Code that specifically define "value," like § 522(a)(2). The goals of the process are different. In the context of *ad valorem* taxation, the central goal is fairness and uniformity in tax assessment. For bankruptcy estate administration, differing substantive contexts may dictate alternative methods of valuation.
>
> No judge on this Court has ever had to make a determination of value structured by the goals of the Minnesota state property tax

5

> system. The undertaking would require one to sensitize to an
> unfamiliar but complex body of law, and possibly to theories of
> valuation different from the general methods of appraisal that are
> used in a commercial context. The Minnesota Tax Court has long-
> term experience and substantial expertise in this very different
> legal world. This Court has none. Perforce, the legal dimension of
> the issue is complex.

*Northbrook*, 245 B.R. at 119 (citations omitted).  The Court fully understood the factual

complexity of trying the value of multiple properties in multiple assessment years, and noted the

County's "major interest in preserving the uniformity and legitimacy of its own assessment

process" which "is best done by leaving the review of its decisions in the hands of a tribunal that

maintains its own body of consistent interpretation." *Id.* at 119-20.  Moreover, the only parties

who stood to benefit from the Court's determination of property values were the owner-investors

of the debtor. *Id.* at 120.

> Where a locally-based debtor's financial problems distill to one
> dispute with a state government or its subdivision, and state law
> already gives the debtor an avenue of redress, it does not behoove
> a federal court to plow in. *In re Onondaga Plaza Maint. Co., Inc.*,
> 206 B.R. 653, 657 (Bankr. N.D.N.Y.1997). If a debtor cannot
> identify other constituencies whose investments would be
> protected by the assumption of bankruptcy jurisdiction over a tax
> dispute, it simply cannot expect a "fresh start" from a federal
> tribunal.

*Northbrook*, 245 B.R. at 121.

Like the debtor in *Northbrook*, this Debtor is asking the Court to value multiple

properties, some of which are already before the Tax Court.  To proceed with the Debtor's

request and litigate the market value of at least 85 properties for one or more assessment years

will require considerable time and judicial resources.[4]  Moreover, many property values for

---

[4] Indeed, Hennepin County wishes to engage in discovery and prepare expert testimony should
the Debtor's motion proceed.

different assessment years have been adjudicated by way of statutory dismissal, preventing this

court from considering corresponding tax liabilities under 11 U.S.C. § 505(a)(2)(A).  And as in

*Northbrook*, no other creditors will benefit by making this determination of value in the

bankruptcy proceeding.  Finally, the application of the Tax Injunction Act and doctrine of

abstention similarly advise against the Debtor's request for value determinations, as will be

discussed further *infra*.  First, however, an amendment to 11 U.S.C. § 505 provides clear

language that may have been decisive in *Northbrook* and is decisive in the present motion.

### C.   11 U.S.C. § 505(a)(2)(C) Bars the Debtor from Litigating Property Values Through Assessment Year 2011

It is not clear from the Debtor's motion which assessment year values he would have this

Court decide.  However, the valuation of properties up to and including assessment year 2011

would violate 11 U.S.C. § 505(a)(2)(C), which states "[t]he court may not so determine * * * the

amount or legality of any amount arising in connection with an ad valorem tax on real or

personal property of the estate, if the applicable period for contesting or redetermining that

amount under applicable nonbankruptcy law has expired." This provision was added in the

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, so not available to the

Court in *Northbrook*.  Pub. L. No. 109-8, 119 Stat. 23 § 701 (2005).  "By amending the statute to

include § 505(a)(2)(C), Congress expressly intended to protect creditors by prohibiting a debtor

from contesting ad valorem tax claims after the time for filing an action challenging the

assessment of such taxes has expired under state law."  *In re Read*, 692 F.3d 1185, 1191 (11th

Cir. 2012) (holding that 11 U.S.C. § 505(a)(2)(C) precludes an extension under 11 U.S.C. § 108

of the time to challenge ad valorem taxes under state law, even when the bankruptcy petition is

filed within that deadline).

Here, the Debtor is asking this Court to determine the value of each of his properties. A property's assessed value is the basis for determining the amount of property taxes due. *See* Minn. Stat. § 273.13 (listing various property classifications with tax rates). A change in valuation of any parcel will impact the taxes owed for that parcel. So, the Debtor is essentially asking this Court to "determine . . . the amount or legality of any amount arising in connection with an ad valorem tax on real . . . property," even though the Debtor's motion is styled as a request for valuation. 11 U.S.C. § 505(a)(2)(C).

This cannot be done "if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired." *Id.* In Minnesota, a taxpayer must file a tax petition by April 30 to contest an assessed value for the preceding year. Minn. Stat. § 278.01 subd. 1(c) ("For all counties, the petitioner must file . . . on or before April 30 of the year in which the tax becomes payable."). Any objection to property taxes assessed in 2011 and payable in 2012 needed to be filed by April 30, 2012. Accordingly, the valuation of properties up to and including assessment year 2011 would violate 11 U.S.C. § 505(a)(2)(C).

### D.   This Court Should Abstain from Deciding Real Property Values Where the Minnesota Tax Court is Best Suited To Do So

To the extent that Debtor seeks a valuation that is not barred by § 505(a), this Court may abstain from considering Debtor's motion. Under the Tax Injunction Act, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. "The Tax Injunction Act does not mention jurisdiction, because it is a rule of abstention." *In re Eveleth Mines, L.L.C.*, 318 B.R. 682, 688 (B.A.P. 8th Cir. 2004). "[T]he TIA bars actions for *declaratory* relief that could interfere with the states' tax collection processes, as well as actions for outright injunctive relief." *Northbrook*, 245 B.R. at 115 (emphasis in original). The

Debtor's present motion is exactly what the Act guards against.  Here, the debtor is seeking a determination of value from a federal bankruptcy court, which will directly translate to property taxes liabilities under Minnesota law, and for which there is a readily available state court remedy – the Minnesota Tax Court – whose jurisdiction the Debtor has already invoked for the valuation of dozens of properties.

When deciding whether to entertain a § 505 motion, the court may look at:

> the complexity of the tax issues to be decided, the need to administer the bankruptcy case in an orderly and efficient manner, the burden on the Bankruptcy Court's docket, the length of time required for trial and decision, the asset and liability structure of the debtor, and the prejudice to the debtor and potential prejudice to the taxing authority.

*In re Galvano*, 116 B.R. 367, 372 (Bankr. E.D.N.Y. 1990).  Key factors favor abstention: Minnesota has a specialized tax court to decide these very issues; deciding dozens of property values would be burdensome to the bankruptcy court; and the local taxing authority prefers to maintain valuation actions in the Tax Court – in which it is already defending challenges to dozens of the Debtor's property values.

### III.    Conclusion

The Tax Injunction Act, the doctrine of abstention, 11 U.S.C. § 505, and this Court's own jurisprudence all compel the conclusion that the Debtor's request does not belong in this proceeding.  Accordingly, Hennepin County requests the Court deny the Debtor's motion in its entirety.

Respectfully submitted,

**MICHAEL O. FREEMAN**
Hennepin County Attorney

Date:  January 31, 2013          By:  /e/ Rebecca Stark Holschuh
Rebecca Stark Holschuh (0392251)
Assistant Hennepin County Attorney
A-2000 Government Center
300 South Sixth Street
Minneapolis, MN 55497
Telephone:  612-348-4797
Email:  Rebecca.holschuh@co.hennepin.mn.us

**ATTORNEY FOR CREDITOR HENNEPIN COUNTY**

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Steven F. Meldahl,

      Debtor.

Bankruptcy File No. 12-46965
Chapter 11

### AFFIDAVIT OF DENISE LINGWALL

STATE OF MINNESOTA  )
                )   ss.
COUNTY OF HENNEPIN  )

Denise Lingwall, being first duly sworn upon oath, deposes and says that:

1. I am the Residential Supervisor in the Minneapolis Assessor's Office. In that capacity, I have direct knowledge of the tax petitions filed by the Debtor Steven Meldahl in the Minnesota Tax Court, to the extent that those petitions include properties located in the City of Minneapolis.

2. Attached hereto as **Exhibit A** is a list of Minneapolis properties included in each of Mr. Meldahl's Tax Court petitions. The properties statutorily dismissed are labeled as such. The table below summarizes **Exhibit A**.

| **Court File No. 27-CV-10-9125** (Assessment Year 2009/Payable Year 2010) | This petition included 63 Minneapolis parcels; 37 of those parcels were statutorily dismissed. |
| --- | --- |
| **Court File No. 27-CV-11-8510** (Assessment Year 2010/Payable Year 2011) | This petition included 62 Minneapolis parcels; 11 of those parcels were statutorily dismissed. |
| **Court File No. 27-CV-12-9125** (Assessment Year 2011/Payable Year 2012) | This petition included 58 Minneapolis parcels; 32 of those parcels were statutorily dismissed. |

**FURTHER AFFIANT SAYETH NOT.**

Subscribed and sworn to before me
this 31st day of January, 2013.

_____
Notary Public

_____
Denise Lingwall



DENNIS P. KAMMERER
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2016

Court File No. 27-CV-09-12137

**Assessment Year/2009 Payable 2010**

| Address | | Disposition | | 2009 Assessed Value | |
|---|---|---|---|---|---|
| 3019 Colfax Ave N | | Statutorily Dismissed | | $ | 48,000 |
| 3015 Colfax Ave N | | Statutorily Dismissed | | $ | 60,000 |
| 2319 Aldrich Ave N | | Statutorily Dismissed | | $ | 75,500 |
| 2315 Aldrich Ave N | | Statutorily Dismissed | | $ | 73,000 |
| 3311 Oakland Ave | | Statutorily Dismissed | | $ | 140,500 |
| 3701 6th St N | | Statutorily Dismissed | | $ | 80,000 |
| 3451 James Ave N | | Statutorily Dismissed | | $ | 50,500 |
| 3335 Oliver An N | | Statutorily Dismissed | | $ | 66,400 |
| 2926 Oliver Ave N | | Statutorily Dismissed | | $ | 71,500 |
| 3103 Logan Ave N | | Statutorily Dismissed | | $ | 84,000 |
| 2623 Knox Ave N | | Statutorily Dismissed | | $ | 84,000 |
| 2807 Knox Ave N | | Statutorily Dismissed | | $ | 75,500 |
| 2955 Colfax Ave N | | Statutorily Dismissed | | $ | 48,000 |
| 2942 Dupont Ave N | | Statutorily Dismissed | | $ | 72,000 |
| 2627 Dupont Ave N | | Statutorily Dismissed | | $ | 24,500 |
| 2711 Fremont Ave N | | Statutorily Dismissed | | $ | 80,000 |
| 3345 6th St N | | Statutorily Dismissed | | $ | 75,500 |
| 321 31st Ave N | | Statutorily Dismissed | | $ | 84,000 |
| 323 30th Ave N | | Statutorily Dismissed | | $ | 60,000 |
| 425 24th Ave N | | Statutorily Dismissed | | $ | 109,000 |
| 1714 Queen Ave N | | Statutorily Dismissed | | $ | 82,000 |
| 1715 Thomas Ave N | | Statutorily Dismissed | | $ | 92,000 |
| 1646 Washburn Ave N | | Statutorily Dismissed | | $ | 69,500 |
| 1518 Thomas Ave N | | Statutorily Dismissed | | $ | 71,500 |
| 819 Newton Ave N | | Statutorily Dismissed | | $ | 67,000 |
| 528 Morgan Ave N | | Statutorily Dismissed | | $ | 84,000 |
| 421 Morgan Ave N | | Statutorily Dismissed | | $ | 84,000 |
| 2539 12th Ave S | | Statutorily Dismissed | | $ | 97,000 |
| 2442 15th Ave S | | Statutorily Dismissed | | $ | 162,000 |
| 2018 11th Ave S | | Statutorily Dismissed | | $ | 108,000 |
| 2634 13th Ave S | | Statutorily Dismissed | | $ | 118,500 |
| 2414 Logan Ave N | | Statutorily Dismissed | | $ | 63,000 |
| 2306 James Ave N | | Statutorily Dismissed | | $ | 63,000 |
| 1523 Morgan Ave N | | Statutorily Dismissed | | $ | 63,000 |
| 3115 Thomas Ave N | | Statutorily Dismissed | | $ | 75,000 |
| 3019 Upton Ave N | | Statutorily Dismissed | | $ | 67,200 |
| 3111 Upton Ave N | | Statutorily Dismissed | | $ | 61,600 |
| | | | | $ | 2,890,200 |

**Exhibit A**

Court File No. 27-CV-10-9125

**Assessment Year/2009 Payable 2010**

| Address | | Disposition | | 2009 Assessed Value | |
|---|---|---|---|---|---|
| 3709 2nd Ave S | | Open | | $ | 119,000 |
| 3725 6th St N | | Open | | $ | 60,000 |
| 4220 Irving Ave N | | Open | | $ | 92,500 |
| 3906 Emerson Ave N | | Open | | $ | 45,000 |
| 2900 Queen Ave N | | Open | | $ | 109,000 |
| 2958 Russell Ave N | | Open | | $ | 67,000 |
| 2735 Queen Ave N | | Open | | $ | 63,000 |
| 2219 29th Ave N | | Open | | $ | 68,500 |
| 3455 James Ave N | | Open | | $ | 67,000 |
| 2910 Newton Ave N | | Open | | $ | 92,500 |
| 2923 Oliver Ave N | | Open | | $ | 65,000 |
| 2931 Oliver Ave N | | Open | | $ | 73,000 |
| 2610 Irving Ave N | | Open | | $ | 60,000 |
| 2946 Colfax Ave N | | Open | | $ | 84,000 |
| 916 30th Ave N | | Open | | $ | 73,000 |
| 1110 27th Ave N | | Open | | $ | 60,000 |
| 2819 Fremont Ave N | | Open | | $ | 59,000 |
| 317 23rd Ave N | | Open | | $ | 84,000 |
| 2500 Humboldt Ave N | | Open | | $ | 45,000 |
| 1711 25th Ave N | | Open | | $ | 60,000 |
| 2322 Irving Ave N | | Open | | $ | 67,000 |
| 1410 Newton Ave N | | Open | | $ | 55,000 |
| 1415 14th Ave N | | Open | | $ | 70,000 |
| 2417 24th Ave N | | Open | | $ | 56,000 |
| 810 Newton Ave N | | Open | | $ | 77,500 |
| 2815 14th Ave S | | Open | | $ | 129,500 |
| | | | | $ | 1,901,500 |

Court File No. 27-CV-11-8510

**Assessment Year 2010/ Payable Year 2011**

| Address | | Disposition | | 2010 Assessed Value | |
|---------|---|-------------|---|-----|---|
| 3701 6th St N | | Statutorily Dismissed | | $ | 76,000 |
| 2923 Oliver Ave N | | Statutorily Dismissed | | $ | 58,500 |
| 2942 Dupont Ave N | | Statutorily Dismissed | | $ | 61,000 |
| 3019 Colfax Ave N | | Statutorily Dismissed | | $ | 41,000 |
| 323 30th Ave N | | Statutorily Dismissed | | $ | 51,000 |
| 2306 James Ave N | | Statutorily Dismissed | | $ | 56,500 |
| 1518 Thomas Ave N | | Statutorily Dismissed | | $ | 64,500 |
| 1000 Logan Ave N | | Statutorily Dismissed | | $ | 46,800 |
| 819 Newton Ave N | | Statutorily Dismissed | | $ | 60,500 |
| 421 Morgan Ave N | | Statutorily Dismissed | | $ | 75,500 |
| 2442 15th Ave S | | Statutorily Dismissed | | $ | 146,000 |
| | | | | $ | 737,300 |

Court File No. 27-CV-11-8519

Assessment Year 2010/ Payable Year 2011

| Address | | Disposition | | 2010 Assessed Value |
|---|---|---|---|---|
| 4411 Aldrich Ave N | | Open | | $ 55,000 |
| 3311 Oakland Ave | | Open | | $ 125,000 |
| 3709 2nd Ave South | | Open | | $ 105,000 |
| 3725 6th St N | | Open | | $ 57,000 |
| 4220 Irving Ave N | | Open | | $ 83,500 |
| 2900 Queen Ave N | | Open | | $ 92,500 |
| 2958 Russell Ave N | | Open | | $ 60,500 |
| 3115 Thomas Ave N | | Open | | $ 67,500 |
| 3019 Upton Ave N | | Open | | $ 60,500 |
| 3111 Upton Ave N | | Open | | $ 55,500 |
| 2735 Queen Ave N | | Open | | $ 56,500 |
| 2219 29th Ave N | | Open | | $ 61,500 |
| 3455 James Ave N | | Open | | $ 63,500 |
| 3451 James Ave N | | Open | | $ 45,000 |
| 3507 Morgan Ave N | | Open | | $ 43,000 |
| 3335 Oliver Ave N | | Open | | $ 63,000 |
| 2910 Newton Ave N | | Open | | $ 78,000 |
| 2926 Oliver Ave N | | Open | | $ 64,500 |
| 3103 Logan Ave N | | Open | | $ 75,500 |
| 2931 Oliver Ave N | | Open | | $ 65,500 |
| 2623 Knox Ave N | | Open | | $ 75,500 |
| 2807 Knox Ave N | | Open | | $ 68,000 |
| 2610 Irving Ave N | | Open | | $ 54,000 |
| 2946 Colfax Ave N | | Open | | $ 71,500 |
| 916 30th Ave N | | Open | | $ 57,000 |
| 3015 Colfax Ave N | | Open | | $ 51,000 |
| 1110 27th Ave N | | Open | | $ 51,000 |
| 2819 Fremont Ave N | | Open | | $ 53,000 |
| 2711 Fremont Ave N | | Open | | $ 72,000 |
| 3345 6th St N | | Open | | $ 71,500 |
| 321 31st Ave N | | Open | | $ 71,500 |
| 425 24th Ave N | | Open | | $ 92,500 |
| 317 23rd Ave N | | Open | | $ 60,000 |
| 2319 Aldrich Ave N | | Open | | $ 64,000 |
| 2315 Aldrich Ave N | | Open | | $ 62,000 |
| 1711 25th Ave N | | Open | | $ 54,000 |
| 2322 Irving Ave N | | Open | | $ 60,500 |
| 2414 Logan Ave N | | Open | | $ 56,500 |
| 1523 Morgan Ave N | | Open | | $ 56,500 |
| 1410 Newton Ave N | | Open | | $ 49,500 |
| 1415 14th Ave N | | Open | | $ 63,000 |
| 2417 24th Ave N | | Open | | $ 50,500 |
| 1714 Queen Ave N | | Open | | $ 74,000 |
| 1715 Thomas Ave N | | Open | | $ 83,000 |

Court File No. 27-CV-11-8519

**Assessment Year 2010/ Payable Year 2011**

| | | | | | |
|---|---|---|---|---|---|
| 1646 Washburn Ave N | | Open | | $ | 69,600 |
| 810 Newton Ave N | | Open | | $ | 70,000 |
| 528 Morgan Ave N | | Open | | $ | 75,500 |
| 2539 12th Ave S | | Open | | $ | 97,000 |
| 2018 11th Ave S | | Open | | $ | 108,000 |
| 2634 13th Ave S | | Open | | $ | 112,000 |
| 2815 14th Ave S | | Open | | $ | 116,500 |
| | | | | **$** | **3,548,600** |

Court File No. 27-CV-12-5129

**Assessment Year 2011/Payable Year 2012**

| Address | | Disposition | | 2011 Assessed Value |
|---|---|---|---|---|
| 1715 Thomas Ave N | | Dismissed | | $ 80,500 |

| Address | | Disposition | | 2011 Assessed Value |
|---|---|---|---|---|
| 3311 Oakland Ave | | Statutorily Dismissed | | $ 119,000 |
| 3709 2nd Ave S | | Statutorily Dismissed | | $ 100,000 |
| 3701 6th St N | | Statutorily Dismissed | | $ 76,000 |
| 2958 Russell Ave N | | Statutorily Dismissed | | $ 60,500 |
| 3115 Thomas Ave N | | Statutorily Dismissed | | $ 67,500 |
| 3111 Upton Ave N | | Statutorily Dismissed | | $ 55,500 |
| 3335 Oliver Ave N | | Statutorily Dismissed | | $ 63,000 |
| 2926 Oliver Ave N | | Statutorily Dismissed | | $ 64,500 |
| 2923 Oliver Ave N | | Statutorily Dismissed | | $ 58,500 |
| 2623 Knox Ave N | | Statutorily Dismissed | | $ 73,000 |
| 2946 Colfax Ave N | | Statutorily Dismissed | | $ 68,000 |
| 2942 Dupont Ave N | | Statutorily Dismissed | | $ 58,000 |
| 3015 Colfax Ave N | | Statutorily Dismissed | | $ 48,500 |
| 2711 Fremont Ave N | | Statutorily Dismissed | | $ 70,000 |
| 3345 6th St N | | Statutorily Dismissed | | $ 71,500 |
| 321 31st Ave N | | Statutorily Dismissed | | $ 68,000 |
| 2500 Humboldt Ave N | | Statutorily Dismissed | | $ 40,500 |
| 2322 Irving Ave N | | Statutorily Dismissed | | $ 60,500 |
| 2306 James Ave N | | Statutorily Dismissed | | $ 56,500 |
| 1415 14th Ave N | | Statutorily Dismissed | | $ 60,000 |
| 1714 Queen Ave N | | Statutorily Dismissed | | $ 72,000 |
| 1518 Thomas Ave N | | Statutorily Dismissed | | $ 64,500 |
| 819 Newton Ave N | | Statutorily Dismissed | | $ 57,500 |
| 810 Newton Ave N | | Statutorily Dismissed | | $ 66,500 |
| 528 Morgan Ave N | | Statutorily Dismissed | | $ 71,500 |
| 421 Morgan Ave N | | Statutorily Dismissed | | $ 71,500 |
| 2539 12th Ave S | | Statutorily Dismissed | | $ 92,000 |
| 2442 15th Ave S | | Statutorily Dismissed | | $ 124,000 |
| 2018 11th Ave S | | Statutorily Dismissed | | $ 102,500 |
| 2634 13th Ave S | | Statutorily Dismissed | | $ 106,500 |
| 2815 14th Ave S | | Statutorily Dismissed | | $ 99,000 |
| | | | | $ 2,266,500 |

**Assessment Year 2011/Payable Year 2012**

| Address | | Disposition | | 2011 Assessed Value | |
|---|---|---|---|---|---|
| 4411 Aldrich Ave N | | Open | | $ | 55,000 |
| 3725 6th St N | | Open | | $ | 57,000 |
| 4220 Irving Ave N | | Open | | $ | 75,000 |
| 2900 Queen Ave N | | Open | | $ | 69,000 |
| 3019 Upton Ave N | | Open | | $ | 60,500 |
| 2735 Queen Ave N | | Open | | $ | 56,500 |
| 3455 James Ave N | | Open | | $ | 63,500 |
| 3446 Oliver Ave N | | Open | | $ | 72,000 |
| 3507 Morgan Ave N | | Open | | $ | 43,000 |
| 2910 Newton Ave N | | Open | | $ | 74,500 |
| 3103 Logan Ave N | | Open | | $ | 73,000 |
| 2931 Oliver Ave N | | Open | | $ | 65,500 |
| 2807 Knox Ave N | | Open | | $ | 68,000 |
| 2610 Irving Ave N | | Open | | $ | 54,000 |
| 3019 Colfax Ave N | | Open | | $ | 41,000 |
| 2819 Fremont Ave N | | Open | | $ | 53,000 |
| 425 24th Ave N | | Open | | $ | 88,000 |
| 317 23rd Ave N | | Open | | $ | 55,500 |
| 2319 Aldrich Ave N | | Open | | $ | 61,000 |
| 2315 Aldrich Ave N | | Open | | $ | 57,000 |
| 1711 25th Ave N | | Open | | $ | 54,000 |
| 2414 Logan Ave N | | Open | | $ | 56,500 |
| 1523 Morgan Ave N | | Open | | $ | 56,500 |
| 2417 24th Ave N | | Open | | $ | 50,500 |
| 1646 Washburn Ave N | | Open | | $ | 69,500 |
| 1000 Logan Ave N | | Open | | $ | 44,500 |
| | | | | $ | 1,573,500 |

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Steven F. Meldahl,                                    Bankruptcy File No. 12-46965
                                                              Chapter 11

     Debtor.

---

### AFFIDAVIT OF REBECCA HOLSCHUH

---

STATE OF MINNESOTA    )
                          )    ss.
COUNTY OF HENNEPIN   )

Rebecca Holschuh, being first duly sworn upon oath, deposes and says that:

1.     I am an Assistant Hennepin County Attorney, and this Affidavit is based upon my personal knowledge in that capacity.

2.     Attached hereto as Exhibit A is a true and correct copy of *In re Brandt*, No. 6-87-478, 1989 WL 109696 (Bankr. D. Minn. Sept. 22, 1989).

FURTHER AFFIANT SAYETH NOT.

                                    *Rebecca Holschuh*
                                  Rebecca Holschuh
                                  Hennepin County Attorney's Office

Subscribed and sworn to before me

this _____ day of January, 2013.

_____
            Notary Public

CAROLYN M. OLSON
Notary Public-Minnesota
My Commission Expires Jan 31, 2015

1989 WL 109696
Only the Westlaw citation is currently available.
United States Bankruptcy Court, D. Minnesota.

In re Clinton BRANDT and Joan Brandt, Debtors.

Bankruptcy No. 6–87–478.    |    Sept. 22, 1989.

**Attorneys and Law Firms**

Lowell P. Bottrell, Crockett & Anderson, Fargo, N.D., for Trustee.

Brad Sinclair, Fargo, N.D., for Prudential Insurance Co.

**Opinion**

### MEMORANDUM ORDER

NANCY C. DREHER, Bankruptcy Judge.

**\*1** The above entitled matter came on for hearing before the undersigned on the 8th day of August, 1989 for determination of the objection by Prudential Insurance Company of America ("Prudential") to the Final Report and Account Before Distribution of the trustee in this Chapter 7 case. Lowell Bottrell appeared for the trustee; Brad Sinclair appeared for Prudential. The court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### FACTS AND PROCEDURAL POSTURE

The objection of Prudential to the trustee's final account arises from the fact that the trustee does not propose to make payment of the real estate taxes that are owing for 1985, 1986, 1987, and 1988 on a parcel of property which the debtor owned but had mortgaged to Prudential and upon which Prudential foreclosed during the course of the Chapter 7 trustee's administration of the estate. The factual context in which this dispute arises is not complex.

Debtors, who were farmers, filed their petition for relief under Chapter 7 of the Bankruptcy Code on October 14, 1987. At the time they owned approximately 720 acres of rural farmland located in the northwestern corner of Grant County, Minnesota. At the time of the filing for relief, the real estate taxes for 1985 and 1986 had been assessed and were unpaid in the following amounts: 1985, $3,363.47 and 1986, $5,390.27. On October 16, 1987, two days after the petition was filed the 1987 taxes were assessed in the amount of $5,192.90.

Prudential held a mortgage on the property and, on its motion, by Order dated February 16, 1988, the court lifted the automatic stay to allow Prudential to foreclose its mortgage pursuant to state law. Prudential did, thereafter, take steps to foreclose its mortgage pursuant to state law. The period of redemption expired on June 15, 1989. During the period of redemption the trustee remained in possession of the property and rented it out. He obtained cash rent from the property for the crop year 1988 and for part of 1989.

Beginning early in the spring of 1988, Prudential was in communication with the Grant County Treasurer's Office encouraging it to file a Proof of Claim for the real estate taxes for 1985, 1986, and 1987. By letter dated February 11, 1988, Prudential notified the trustee of the court's order lifting the stay, urged the trustee to rent the property for the year 1988 and informed the trustee that Prudential would be "inducing Grant County to file appropriate Proof of Claims to see to it that real estate taxes are paid as far as allowed by the law from the cash rent income." While the County Treasurer apparently initially indicated to Prudential that she would file a claim in the bankruptcy case, she never did so. By letter dated February 1, 1989 directed to the attorney for the trustee, Prudential discussed the lease for the crop year 1989, the split that it proposed between the trustee and Prudential for the cash rents to be obtained in that year (given the fact that Prudential would likely take possession of the property on June 15, 1989), and informed the trustee that it might file a Proof of Claim in the name of the Grant County Treasurer for the real estate taxes for 1985, 1986, 1987, and 1988. The letter also set out Prudential's contention as to the legal basis for such a claim. On February 6, 1989, trustee's counsel responded that he did not believe the estate was responsible for any of the real estate taxes with the possible exception of the 1986 taxes, and even as to those he did not commit to pay.

**\*2** After first having notified creditors that no claims should be filed because it appeared that there would be no assets to distribute, on March 21, 1988, the Clerk of Bankruptcy Court noticed creditors to file Proofs of Claim on or prior to June 20, 1988. Neither Prudential nor Grant County filed a Proof of Claim for the real estate taxes by that date. On May 5, 1989 Prudential did file a Proof of Claim in the amount of $20,370.56 in the name of the Grant County Treasurer for



EXHIBIT
A

payment of real estate taxes for 1985 through 1988. The claim form indicated that the claim was filed as a priority claim under 11 U.S.C. § 507(a)(7).

On May 16, 1989 the trustee filed his Final Report and Account Before Distribution. The report reflected that the trustee did not propose to pay Prudential any sum of its claim. On June 28, 1989, Prudential objected to the trustee's Final Report and Account Before Distribution and coupled that with a motion for amendment of an informal Proof of Claim. Shortly thereafter, the trustee responded to the objection and also formally objected to Prudential's Proof of Claim filed on May 5, 1989.

## DISCUSSION

### A. Contentions of the Parties

Prudential asserts that 1) the 1986 taxes which were assessed before the commencement of the case and payable without penalty one year before the date of filing of the bankruptcy petition are a priority obligation of the estate pursuant to 11 U.S.C. § 507(a)(7); 2) the 1985 taxes are a general unsecured debt incurred prior to the debtor's filing and should be included within the unsecured claims; and 3) the 1987 and 1988 real estate taxes are administrative expenses or alternatively are general unsecured obligations of the estate. Prudential further asserts that the exchange of letters between the trustee and its counsel, on the one hand, and Prudential, on the other, which occurred in February, 1988, along with certain statements made in its motion to lift the stay, constituted an informal Proof of Claim made in the name of the Treasurer of Grant County. Thus, Prudential contends that it should be allowed to amend in accordance with the formal claim filed on May 5, 1989.

The trustee raises both procedural and substantive objections to the position taken by Prudential. The trustee asserts that Prudential has no standing to file a Proof of Claim, formal or informal, in the name of the Grant County Treasurer, and even if it did properly file as an agent of the County Treasurer, it did not do so in a timely fashion under Bankruptcy Rule 3002(c). The trustee further asserts that, even if Prudential has standing to assert a claim on behalf of the Grant County Treasurer, no formal claim was filed in timely fashion, and Prudential is in no position to assert that its communications constituted an informal claim that should be recognized on an equitable basis. On the merits, the trustee asserts that according to

Minnesota law, real estate taxes are not a personal obligation to the owner of the property but are rather an obligation running with the land which secures that claim. Accordingly, the trustee asserts, the 1985 taxes are not entitled to be treated as an unsecured claim. The trustee further asserts that the 1986 taxes do not come within the provisions of 11 U.S.C. § 507(a)(7)(B) because they are secured by the land rather than being an unsecured debt. Finally the trustee asserts that the 1987 and 1988 taxes, being liens against and fully secured by the land itself, are not entitled to administrative expense status.

**\*3**   The parties have cited the Court to no authority on point with respect to any of these issues and profess to be unable to find any. It is the position of the trustee, moreover, that Prudential's position is far removed from practice in that trustees in this district uniformly refuse to pay real estate taxes on property of the estate in cases where the property is foreclosed upon by a secured creditor during the course of the case administration. In fact, at one point the trustee took the position that the United States Trustee will not approve a final account which proposes to pay real estate taxes on such property, but at oral argument provided no support for that statement.

### B. Asserting Third Party's Proof of Claim

As the purchaser of the property encumbered by the tax liens, Prudential is at least liable with the debtor for the amount of the taxes, if not solely liable. Where a creditor, such as the Grant County Treasurer, has not filed a Proof of Claim, an entity which is liable with the debtor to that creditor may file a Proof of Claim in the name of that creditor. Bankruptcy Rule 3005(a). Prudential, however, failed to file a formal Proof of Claim in the name of the Grant County Treasurer within the 30 days provided for by Rule 3005(a). Nonetheless, Prudential may assert an informal Proof of Claim in the name of the Grant County Treasurer, provided that the requirements for establishing such a claim are met. *In re WPRV–TV*, —— B.R. —— (Bktcy.E.D.Okla. May 24, 1989) (1989 WESTLAW 77522, at 4).

On this issue, the trustee vaguely suggests that Prudential, because of its actions, should not be permitted to obtain the equitable remedy of an informal Proof of Claim. Yet the trustee alleges no grounds, and the Court can find none itself, that would justify a conclusion that Prudential comes before the Court with unclean hands and is thus precluded from receiving equitable relief.

### C. Informal Proof of Claim

The time for filing Proofs of Claim provided for by Bankruptcy Rule 3002(c) expired June 20, 1988. [1] If Prudential desired to assert a Proof of Claim in the name of the Grant County Treasurer, it was required to do so on or prior to 30 days after June 20, 1988. Bankruptcy Rule 3005(a). Prudential did not file such a Proof of Claim until May 5, 1989, which filing was not timely.

Prudential, however, contends that its letter to the trustee dated February 11, 1988 and certain recitals within its Motion for Relief from Automatic Stay filed January 19, 1988 constituted an informal Proof of Claim. The February 11 letter from Prudential's counsel Roger J. Minch to the trustee stated, "we will be inducing *Grant County* to file the appropriate Proof of Claims to see to it that real estate taxes are paid as far as allowed by the law from the cash rent income." Exhibit A of Prudential's Objection to Trustee's Final Report (emphasis added). The Motion for Relief from Automatic Stay recited that the 1985, 1986 and 1987 real estate taxes "remain unpaid."

**\*4** An informal Proof of Claim must communicate to the trustee that a claim is being made against the assets of the bankruptcy estate, and must clearly allege the nature and amount of that claim. *First American Bank & Trust v. Butler Machine Co.* (*In re Haugen Construction Services. Inc.*), 876 F.2d 681 (8th Cir.1989); *In re Donovan Wire & Iron Co.*, 822 F.2d 38 (8th Cir.1987). Clearly, neither the letter nor the recitals alone was sufficient to constitute an informal Proof of Claim. Moreover, even if these two documents are read together, I find that they neither communicated *Prudential's* intention to assert a Proof of Claim in the name of the Grant County Treasurer, nor did they allege the legal basis for Grant County's claim against the assets of the bankruptcy estate, nor did they allege the amount of that claim.

Therefore, I conclude that the letter and recitals did not constitute an informal Proof of Claim. "Although great liberality is to be permitted in amending claims, an informal claim cannot be so vague as to require the trustee to be a mindreader." *Myers v. Halverson* (*In re Irvine* ), No. 3-89 CIV 428 (D.Minn. Aug. 16, 1989). Prudential's letter to trustee's counsel dated February 1, 1989 might have met the requirements for an informal Proof of Claim, but the trustee

did not receive the letter until long after the 30 day period for asserting Proofs of Claim on behalf of others had expired.

Consequently, I find that Prudential failed to make timely assertion of an informal Proof of Claim. Moreover, even if Prudential had timely asserted an informal Proof of Claim, Prudential's objection would fail on the merits with respect to three of the four years of real estate tax liability involved.

### D. Status of 1985 and 1986 Taxes

The 1985 real estate taxes do not constitute a general unsecured claim, as Prudential contends:

Real estate taxes are assessed and enforced against the land itself. They are not charges against the owner of the estate. Proceedings to enforce them are strictly *in rem*.

*Chun King Sales, Inc. v. St. Louis County*, 256 Minn. 375, 380, 98 N.W.2d 194 (1959); *see also State v. Rhude & Fryberger*, 266 Minn. 16, 20–24, 123 N.W.2d 196 (1963). Consequently, a pre-petition tax lien on the land cannot be transformed into a personal obligation of the landowner by the filing of a bankruptcy petition. *See Gline v. Horn & Co.* (*In re Isley* ), —B.R. —— (Bktcy.D.N.J. July 24, 1989) (1989 WESTLAW 100614), at 2–3. Therefore, the property Prudential has purchased continues to be encumbered by the lien for the 1985 taxes. The foreclosure sale did not constitute a sale free and clear of liens. *See* 11 U.S.C. § 363(f).

For the same reasons, the 1986 real estate taxes are liens against Prudential's property, and thus cannot constitute a priority claim against the bankruptcy estate, as Prudential contends. *See* 11 U.S.C. § 507(a)(7)(B). As the trustee correctly notes, section 507(a)(7) applies only to "*unsecured* claims of governmental units." 11 U.S.C. § 507(a)(7) (emphasis added). Real estate taxes constitute unsecured claims when the statutory liens that would otherwise secure them are precluded from attaching to the debtor's property by operation of the automatic stay. 11 U.S.C. § 362(a). The lien for the 1986 taxes attached January 2, 1986. Minn.Stat. § 272.31. Consequently, the lien for the 1986 taxes had attached before the automatic stay arose upon filing of the bankruptcy petition on October 14, 1987. *Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.* (*In re Wheeling–Pittsburgh Steel Corp.*), —— F.2d —— (3d Cir. Aug. 22, 1989) (1989 WESTLAW 95405, at 4).

In re Brandt, Not Reported in B.R. (1989)

### E. Status of 1987 Taxes

*5  Prudential argues that the 1987 taxes should be treated as an administrative expense of the bankruptcy estate, since those taxes were not assessed until October 16, 1987, two days after the bankruptcy petition was filed. The lien against Prudential's land for those taxes, however, attached January 2, 1987, prior to the petition's being filed and the resulting onset of the automatic stay. Minn.Stat. § 272.31. The assessment relates back to the date the lien attached, and therefore was effective prior to the onset of the automatic stay. *Gline,* 104 B.R. 673 (1989 WESTLAW 100614, at 2–3). Moreover, the assessment itself did not violate the stay pursuant to section 362(a)(6), since the "generally applicable law" of Minnesota allows a post-petition action to perfect a pre-petition interest to relate back to the date the original interest arose. 11 U.S.C. §§ 362(b)(3), 546(b); *see also Gline,* 104 B.R. 673 (1989 WESTLAW 100614, at 3–4) (citing *Parr v. Suffolk County Treasurer (In re Parr* ), 880 F.2d 1540 (2d Cir.1989)). Consequently, the property Prudential has purchased continues to be encumbered by the lien for the 1987 taxes.

### F. Status of 1988 Taxes

If the bankruptcy petition had not been filed, the lien for 1988 taxes would have attached January 2, 1988. Minn.Stat. § 272.31. That lien, however, was precluded from attaching by operation of the automatic stay upon the filing of the petition on October 14, 1987. *Equibank, N.A.,* 884 F.2d 80 (1989 WESTLAW 95405, at 4). Consequently, the 1988 taxes would have been an administrative expense of the bankruptcy estate. 11 U.S.C. § 503(b)(1)(B)(i); *Gline,* 104 B.R. 673 (1989 WESTLAW 100614, at 5–6).

THEREFORE, IT IS HEREBY ORDERED:

1. Prudential's objection to trustee's Final Report and Account Before Distribution is overruled.

2. The Trustee's Objection to Prudential's Proof of Claim filed May 5, 1989 is sustained in its entirety, with respect to the 1985, 1986 and 1987 on both procedural and substantive grounds, and with respect to the 1988 taxes on procedural grounds.

Footnotes

1       Under Local Rule 114(e), every claimant excluding the trustee seeking to make an administrative expense claim on a chapter 7 case must file such claim on a timely basis and claim priority status.

End of Document

© 2013 Thomson Reuters. No claim to original U.S. Government Works.

**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

Steven F. Meldahl,                                    Bankruptcy File No. 12-46965
                                                               Chapter 11

         Debtor.

**CERTIFICATE OF SERVICE**

I, Rebecca Holschuh, declare that on January 31, 2013, I caused the Local Tax Authority's Objection to Debtor's Motion for an Order Determining Valuation of Real Property and Memorandum in Support of Objection, along with supporting affidavits and a proposed order, to be electronically filed.  Pursuant to L.R. 9006—1(a), the following individuals will receive service through the court's Electronic Case Filing System:

- Rebecca S. Christensen, rchristensen@eckberglammers.com
- Rebecca S Holschuh, rebecca.holschuh@co.hennepin.mn.us, barb.besta@co.hennepin.mn.us;suzanne.ryan@co.hennepin.mn.us
- Orin J Kipp, okipp@wilfordgeske.com, mboelen@wgcmn.com;nbengtson@wgcmn.com
- Thomas Lallier, ECF_Notices@foleymansfield.com
- Richard L. Leighton, rick@leightonhetland.com
- Charles N. Nauen, cnnauen@locklaw.com, jmtreiber@locklaw.com
- Steven B Nosek, snosek@visi.com, loriadamson@visi.com
- Michael E. Ridgway, mike.ridgway@usdoj.gov
- US Trustee, ustpregion12.mn.ecf@usdoj.gov

To the best of my knowledge, all parties on which these documents must be served are Filing Users and will receive service electronically.

Date:  January 31, 2013            /e/ Rebecca Stark Holschuh
                                              Rebecca Stark Holschuh (0392251)
                                              Assistant Hennepin County Attorney
                                              A-2000 Government Center
                                              300 South Sixth Street
                                              Minneapolis, MN 55497
                                              Telephone:  612-348-4797
                                              Email:  Rebecca.holschuh@co.hennepin.mn.us

**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA**

In re:

Steven F. Meldahl,                                    Bankruptcy File No. 12-46965
                                                                      Chapter 11

      Debtor.

**ORDER DENYING DEBTOR'S MOTION TO DETERMINE PROPERTY VALUES**

This matter came before the Court on February 5, 2013 upon the Debtor's Motion for Order Determining Valuation of Real Property.  Counsel for the parties noted their appearances on the record.

Based on the written submissions of the parties and the oral arguments presented at the motion hearing, the Court makes the following Order:

**ORDER**

1.  The Debtor's motion seeking a determination of real property values is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

BY THE COURT:

Date: _____          _____
                                                              Gregory F. Kischel
                                                              Chief Judge