## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA
### FOURTH DIVISION

In re:                                                    **Case No.: 12-46965**
                                                          **Chapter 11 Case**
**Steven F. Meldahl,**

                                                                          **Debtor.**
_____

### NOTICE OF HEARING AND MOTION TO SELL REAL ESTATE
### FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES
_____

**TO:    THE UNITED STATES TRUSTEE AND OTHER PARTIES IN INTEREST AS
          SPECIFIED IN LOCAL RULE 9013.3:**

1.      Steven F. Meldahl ("Debtor") through its undersigned attorney hereby

moves the Court for the relief requested below and gives notice of hearing.

2.      The Court will hold a hearing on this Motion at 2:00 p.m. on Tuesday,

March 12, 2013, before the Honorable Gregory F. Kishel, in Courtroom 2A, U.S.

Courthouse 316 North Robert Street, St. Paul, MN, 55101.  At the hearing, the Debtor

will seek an order approving the sale of certain of its assets free and clear of liens,

claims and encumbrances.

3.      Any response or objection to the matters to be heard at the hearing must

be filed and delivered not later than Thursday, March 7, 2013, which is five days prior to

the hearing.  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED,

THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157

and 1334, Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and Local Rules 1070-1 and 1073.  This is a core proceeding pursuant to 28

-1-

U.S.C. §157(b)(2).  The petition commencing this Chapter 11 case was filed on

December 12, 2012 (the "Petition Date").  The case is currently pending in this Court.

5.      The statute predicates for the relief requested herein are 11 U.S.C. §105,

§363(b) and §363(c).  This motion is filed under Bankruptcy Rules 6004, 6006 and 9014

and Local Rules 6004-1 and 9013-1 through 9013-3.

6.      The Debtor owns several properties that are rental properties.  One

property is located at 3210 Upton Avenue North, Minneapolis, MN.  The property is

unencumbered with the exception of unpaid contested real estate taxes.  The legal

description of the property is:

> Lot 011, Block 017, Branham & Greenleafs Addition to Minneapolis,
> Hennepin County, State of Minnesota
> PID No.:  08-029-24-13-0179

The Debtor entered into a Purchase Agreement to sell the property to Twin Cities

Community Land Bank, LLC.  The Purchase Agreement is dated October 11, 2012.

The Debtor has now entered into an Amendment to Purchase Agreement as of

February 7, 2013.  The Amendment extends the closing date to March 29, 2013.  The

Purchase Agreement is attached to this Motion as **Exhibit A** and the Amendment is

attached to this Motion as **Exhibit B**.  The proposed sale is not contingent on any other

event.  The Purchase Agreement calls for the Buyer to pay to the Debtor the sum of

$8,500.00.

7.      The Debtor believes that the sale is appropriate and in the best interest of

the Debtor's estate and the creditors of the Debtor.

8.      Pursuant to Local Rule 9013-2 the Debtor gives notice that he may, if necessary, call himself as a witness in support of this Motion.

**WHEREFORE,** the Debtor moves for an Order authorizing the sale of the real property as described in this Motion and for such other and further relief as is just and equitable.

Dated:  February 14, 2013.          **By:____ /e/ Steven B. Nosek**
                                    **Steven B. Nosek, #79960**
                                    **2855 Anthony Lane South, #201**
                                    **St. Anthony, MN 55418**
                                    **(612) 335-9171**

                                    **ATTORNEY FOR DEBTOR**

VERIFICATION

I, Steven F. Meldahl, the Debtor named in the foregoing pleading, declare under penalty of perjury that the foregoing pleading is true and correct according to the best of my knowledge, information and belief.

Dated:  2-14-13

_____
Steven F. Meldahl

**PURCHASE AGREEMENT**

This form approved by the Minnesota Association of REALTORS®,
which disclaims any liability arising out of use or misuse of this form.
© 2012 Minnesota Association of REALTORS®, Edina, MN

1.  Date _____ 10/11/12 _____

2.  Page 1 of _____

3.  RECEIVED OF __Twin Cities Community Land Bank LLC_____

4.  _____

5.  the sum of _____ __Five Hundred__ _____ Dollars ($ ___500.00___ )

6.  by ☒ CHECK ☐ CASH ☐ NOTE as earnest money to be deposited upon Final Acceptance of Purchase
    (Check one.)

7.  Agreement by all parties, on or before the third Business Day after Final Acceptance, in the trust account of listing
8.  broker, unless otherwise agreed to in writing, but to be returned to Buyer if Purchase Agreement is not accepted
9.  by Seller.

10. Said earnest money is part payment for the purchase of the property located at

11. Street Address: __3210   Upton Ave N_____

12. City of _____ __Minneapolis__ _____, County of _____ __Hennepin__ _____.

13. State of Minnesota, legally described as

14. LOT 011 BLOCK 017 BRANHAM & GREENLEAFS ADDN TO MPLS

15.

16.

17. including all fixtures on the following property, if any, owned by Seller and used and located on said property,
18. including but not limited to garden bulbs, plants, shrubs and trees; storm sash, storm doors, screens and awnings;
19. window shades, blinds, traverse and curtain and drapery rods; attached lighting fixtures and bulbs; plumbing
20. fixtures, water heater, heating plants (with any burners, non-fuel tanks, stokers and other equipment used in connection
21. therewith), built-in air-conditioning equipment, electronic air filter, water softener ☐ OWNED ☐ RENTED ☒ NONE,
    (Check one.)

22. built-in humidifier and dehumidifier, liquid fuel tank(s) ☐ OWNED ☐ RENTED ☒ NONE and controls (if the
    (Check one.)

23. property of Seller), sump pump; attached television antenna, cable TV jacks and wiring; BUILT-INS: dishwashers,
24. garbage disposals, trash compactors, ovens, cook-top stoves, microwave ovens, hood fans, intercoms;
25. ATTACHED: carpeting; mirrors; garage door openers and all controls; smoke detectors; fireplace screens, doors and

26. heatilators; AND the following personal property:

27.

28.

29.

30. all of which property Seller has this day agreed to sell to Buyer for sum of ($ ___8,500.00___ )

31. __Eight Thousand Five Hundred__ _____ Dollars,

32. which Buyer agrees to pay in the following manner:

33. 1. Cash of ___100___ percent (%) of the sale price, or more in Buyer's sole discretion, which includes the earnest
34.    money; PLUS

35. 2. Financing of _____ percent (%) of the sale price, which will be the total amount secured against this property
36.    to fund this purchase.

37. Such financing shall be (check one) ☐ a first mortgage; ☐ a contract for deed; or ☐ a first mortgage with
38. subordinate financing, as described in the attached Addendum;
39. ☐ Conventional ☐ FHA ☐ DVA ☐ Assumption ☐ Contract for Deed ☐ Other: ___cash___ .
    (Check one.)

40. The date of closing shall be ___November   12th___ , 20 _12_ .

MN:PA-1 (10/12)

Exhibit A

InstanetForms

**PURCHASE AGREEMENT**

41.    Page 2 Date _____ 10/11/12

42.    Property located at _____ 3210 Upton Ave N, Minneapolis, MN 55412 _____.

43.    This Purchase Agreement ☐ IS ☒ IS NOT subject to a *Contingency Addendum* for sale of Buyer's property.
------(Check one.)------

44.    (If answer is IS, see attached *Addendum*.)
45.    (If answer is IS NOT, the closing of Buyer's property, if any, may still affect Buyer's ability to obtain financing, if financing
46.    is applicable.)

47.    This Purchase Agreement ☐ IS ☒ IS NOT subject to cancellation of a previously written purchase agreement
------(Check one.)------

48.    dated _____ , 20 _____ ,
49.    (If answer is IS, said cancellation shall be obtained no later than _____ , 20 _____ . If
50.    said cancellation is not obtained by said date, this Purchase Agreement is canceled. Buyer and Seller shall immediately
51.    sign a *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid
52.    hereunder to be refunded to Buyer.)

53.    Buyer has been made aware of the availability of property inspections. Buyer ☐ Elects ☒ Declines to have a
------(Check one.)------

54.    property inspection performed at Buyer's expense.

55.    This Purchase Agreement ☐ IS ☒ IS NOT subject to an *Inspection Contingency Addendum.*
------(Check one.)------

56.    (If answer is IS, see attached *Addendum*.)

57.    **DEED/MARKETABLE TITLE:** Upon performance by Buyer, Seller shall deliver a
58.    ☒ Warranty Deed or ☐ Other: _____ Deed joined in by spouse, if any, conveying
------(Check one.)------

59.    marketable title, subject to
60.    (a)  building and zoning laws, ordinances, and state and federal regulations;
61.    (b)  restrictions relating to use or improvement of the property without effective forfeiture provisions;
62.    (c)  reservation of any mineral rights by the State of Minnesota;
63.    (d)  utility and drainage easements which do not interfere with existing improvements;
64.    (e)  rights of tenants as follows (unless specified, not subject to tenancies): _____
65.    _____ ; and
66.    (f)  others (must be specified in writing): _____
67.    _____

68.    Seller shall pay on the date of closing all real estate taxes due and payable in all prior years including all penalties and
69.    interest.

70.    ☒ BUYER SHALL PAY ☐ SELLER SHALL PAY on date of closing any deferred real estate taxes (e.g., Green
------(Check one.)------

71.    Acres) or special assessments, payment of which is required as a result of the closing of this sale.

72.    ☒ BUYER AND SELLER SHALL PRORATE AS OF THE DATE OF CLOSING ☐ SELLER SHALL PAY ON
------(Check one.)------

73.    DATE OF CLOSING all installments of special assessments certified for payment, with the real estate taxes due and
74.    payable in the year of closing.

75.    ☒ BUYER SHALL ASSUME ☐ SELLER SHALL PAY on date of closing all other special assessments levied as
------(Check one.)------

76.    of the date of this Purchase Agreement.

77.    ☒ BUYER SHALL ASSUME ☐ SELLER SHALL PROVIDE FOR PAYMENT OF special assessments pending as
------(Check one.)------

78.    of the date of this Purchase Agreement for improvements that have been ordered by any assessing authorities. (Seller's
79.    provision for payment shall be by payment into escrow of two (2) times the estimated amount of the assessments or
80.    less, as required by Buyer's lender.)

MN:PA-2 (10/12)

**PURCHASE AGREEMENT**

81.                                                       Page 3 Date _____ 10/11/12 _____

82. Property located at _____ 3210 Upton Ave N, Minneapolis, MN 55412 _____ .

83. Buyer shall pay any unpaid special assessments payable in the year following closing and thereafter, the payment of
84. which is not otherwise herein provided.

85. As of the date of this Purchase Agreement, Seller represents that Seller ☐ HAS ☒ HAS NOT received a notice
                                                                          (Check one.)

86. regarding any new improvement project from any assessing authorities, the costs of which project may be assessed
87. against the property. Any such notice received by Seller after the date of this Purchase Agreement and before closing
88. shall be provided to Buyer immediately. If such notice is issued after the date of this Purchase Agreement and on
89. or before the date of closing, then the parties may agree in writing, on or before the date of closing, to pay, provide
90. for the payment of or assume the special assessments. In the absence of such agreement, either party may declare
91. this Purchase Agreement canceled by written notice to the other party, or licensee representing or assisting the other
92. party, in which case this Purchase Agreement is canceled. If either party declares this Purchase Agreement canceled,
93. Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and
94. directing all earnest money paid hereunder to be refunded to Buyer.

95. Buyer shall pay ☒ PRORATED FROM DAY OF CLOSING ☐ _____ 12ths OF ☐ ALL ☐ NO real estate taxes due
                                                         (Check one.)

96. and payable in the year 20 12 _____ .

97. Seller shall pay ☒ PRORATED TO DAY OF CLOSING ☐ _____ 12ths OF ☐ ALL ☐ NO real estate taxes due and
                                                       (Check one.)

98. payable in the year 20 _____ . If the closing date is changed, the real estate taxes paid shall, if prorated, be adjusted
99. to the new closing date. Seller warrants taxes due and payable in the year 20 12 shall be ☐ FULL- ☐ PART- ☒ NON-
                                                                                            (Check one.)
100. homestead classification.

101. If part- or non-homestead classification is checked, Seller agrees to pay Buyer at closing $ 0
102. toward the non-homestead real estate taxes. Buyer agrees to pay any remaining balance of non-homestead taxes
103. when they become due and payable. Buyer shall pay real estate taxes due and payable in the year following closing
104. and thereafter, the payment of which is not otherwise herein provided. No representations are made concerning the
105. amount of subsequent real estate taxes.

106. **POSSESSION:** Seller shall deliver possession of the property no later than _date_ of _____ after closing.
107. Seller agrees to remove ALL DEBRIS AND ALL PERSONAL PROPERTY NOT INCLUDED HEREIN from the property
108. by possession date.

109. **PRORATIONS:** All interest; unit owners' association dues; rents; and charges for city water, city sewer, electricity and
110. natural gas shall be prorated between the parties as of date of closing. Buyer shall pay Seller for remaining gallons of
111. fuel oil or liquid petroleum gas on the day of closing, at the rate of the last fill by Seller.

112. **TITLE AND EXAMINATION:** As quickly as reasonably possible after Final Acceptance of this Purchase Agreement:
113.    (a) Seller shall surrender any abstract of title and a copy of any owner's title insurance policy for the property, if
114.        in Seller's possession or control, to Buyer or Buyer's designated title service provider; and
115.    (b) Buyer shall obtain the title services determined necessary or desirable by Buyer or Buyer's lender, including
116.        but not limited to title searches, title examinations, abstracting, a title insurance commitment or an attorney's
117.        title opinion at Buyer's selection and cost and provide a copy to Seller.

118. Seller shall use Seller's best efforts to provide marketable title by the date of closing. Seller agrees to pay all costs
119. and fees necessary to convey marketable title including obtaining and recording all required documents, subject to the
120. following:

121. In the event Seller has not provided marketable title by the date of closing, Seller shall have an additional 30 days to
122. make title marketable, or in the alternative, Buyer may waive title defects by written notice to Seller. In addition to
123. the 30-day extension, Buyer and Seller may, by mutual agreement, further extend the closing date. Lacking such
124. extension, either party may declare this Purchase Agreement canceled by written notice to the other party, or
125. licensee representing or assisting the other party, in which case this Purchase Agreement is canceled. If either
126. party declares this Purchase Agreement canceled, Buyer and Seller shall immediately sign a *Cancellation of*
127. *Purchase Agreement* confirming said cancellation and directing all earnest money paid hereunder to be refunded
128. to Buyer.

MN:PA-3 (10/12)

## PURCHASE AGREEMENT

129.    Page 4 Date _____ 10/11/12 _____

130. Property located at _____ 3210 Upton Ave N, Minneapolis, MN 55412 _____ .

131. **SUBDIVISION OF LAND:** If this sale constitutes or requires a subdivision of land owned by Seller, Seller shall pay
132. all subdivision expenses and obtain all necessary governmental approvals. Seller warrants that the legal description
133. of the real property to be conveyed has been or shall be approved for recording as of the date of closing. Seller warrants
134. that the buildings are or shall be constructed entirely within the boundary lines of the property. Seller warrants that
135. there is a right of access to the property from a public right-of-way. These warranties shall survive the delivery of the
136. deed or contract for deed.

137. **MECHANIC'S LIENS:** Seller warrants that prior to the closing, payment in full will have been made for all labor, materials,
138. machinery, fixtures or tools furnished within the 120 days immediately preceding the closing in connection with
139. construction, alteration or repair of any structure on, or improvement to, the property.

140. **NOTICES:** Seller warrants that Seller has not received any notice from any governmental authority as to condemnation
141. proceedings, or violation of any law, ordinance or regulation. If the property is subject to restrictive covenants, Seller
142. warrants that Seller has not received any notice from any person or authority as to a breach of the covenants. Any
143. such notices received by Seller shall be provided to Buyer immediately.

144. **DIMENSIONS:** Buyer acknowledges any dimensions, square footage or acreage of land or improvements provided
145. by Seller, third party, or broker representing or assisting Seller are approximate. Buyer shall verify the accuracy of
146. information to Buyer's satisfaction, if material, at Buyer's sole cost and expense.

147. **ACCESS:** Seller agrees to allow reasonable access to the property for performance of any surveys or inspections
148. agreed to herein.

149. **RISK OF LOSS:** If there is any loss or damage to the property between the date hereof and the date of closing for any
150. reason, including fire, vandalism, flood, earthquake or act of God, the risk of loss shall be on Seller. If the property
151. is destroyed or substantially damaged before the closing date, this Purchase Agreement is canceled, at Buyer's option,
152. by written notice to Seller or licensee representing or assisting Seller. If Buyer cancels this Purchase Agreement,
153. Buyer and Seller shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation and
154. directing all earnest money paid hereunder to be refunded to Buyer.

155. **TIME OF ESSENCE:** Time is of the essence in this Purchase Agreement.

156. **ENTIRE AGREEMENT:** This Purchase Agreement, any attached exhibits and any addenda or amendments signed
157. by the parties shall constitute the entire agreement between Seller and Buyer and supersedes any other written or
158. oral agreements between Seller and Buyer. This Purchase Agreement can be modified or canceled only in writing
159. signed by Seller and Buyer or by operation of law. The parties agree the electronic signature of any party on any document
160. related to this transaction constitute valid, binding signatures. All monetary sums are deemed to be United States
161. currency for purposes of this Purchase Agreement. Buyer or Seller may be required to pay certain closing costs, which
162. may effectively increase the cash outlay at closing or reduce the proceeds from the sale.

163. **FINAL ACCEPTANCE:** To be binding, this Purchase Agreement must be fully executed by both parties and a copy
164. must be delivered.

165. **CALCULATION OF DAYS:** Any calculation of days begins on the first day (calendar or Business Days as specified)
166. following the occurrence of the event specified and includes subsequent days (calendar or Business Days as specified)
167. ending at 11:59 P.M. on the last day.

168. **BUSINESS DAYS:** "Business Days" are days which are not Saturdays, Sundays or state or federal holidays unless
169. stated elsewhere by the parties in writing.

170. **DEFAULT:** If Buyer defaults in any of the agreements herein, Seller may cancel this Purchase Agreement, and any
171. payments made hereunder, including earnest money, shall be retained by Seller as liquidated damages and Buyer
172. and Seller shall affirm the same by a written cancellation agreement.

173. If Buyer defaults in any of the agreements hereunder, Seller may terminate this Purchase Agreement under the
174. provisions of MN Statute 559.21. If either Buyer or Seller defaults in any of the agreements hereunder or there exists
175. an unfulfilled condition after the date specified for fulfillment, either party may cancel this Purchase Agreement under
176. MN Statute 559.217, Subd. 3. Whenever it is provided herein that this Purchase Agreement is canceled, said language
177. shall be deemed a provision authorizing a Declaratory Cancellation under MN Statute 559.217, Subd. 4.

178. If this Purchase Agreement is not canceled or terminated as provided hereunder, Buyer or Seller may seek actual
179. damages for breach of this Purchase Agreement or specific performance of this Purchase Agreement; and, as to
180. specific performance, such action must be commenced within six (6) months after such right of action arises.

MN:PA-4 (10/12)

**PURCHASE AGREEMENT**

181.  Page 5   Date _____ 10/11/12 _____

182.  Property located at _____ 3210 Upton Ave N, Minneapolis, MN 55412 _____ .

183.  **BUYER HAS THE RIGHT TO A WALK-THROUGH REVIEW OF THE PROPERTY PRIOR TO CLOSING TO**
184.  **ESTABLISH THAT THE PROPERTY IS IN SUBSTANTIALLY THE SAME CONDITION AS OF THE DATE OF**
185.  **THIS PURCHASE AGREEMENT.**

186.  **BUYER HAS RECEIVED A** *(check any that apply):* ☐ *SELLER'S PROPERTY DISCLOSURE STATEMENT* OR A
187.  ☒ *SELLER'S DISCLOSURE ALTERNATIVES* FORM.

188.  **DESCRIPTION OF PROPERTY CONDITION:** See *Seller's Property Disclosure Statement* or *Seller's Disclosure*
189.  *Alternatives* for description of disclosure responsibilities and limitations, if any.

190.  **BUYER HAS RECEIVED THE INSPECTION REPORTS, IF REQUIRED BY MUNICIPALITY.**

191.  BUYER ACKNOWLEDGES THAT NO ORAL REPRESENTATIONS HAVE BEEN MADE REGARDING THE CONDITION
192.  OF THE PROPERTY.

193.  *(Check appropriate boxes.)*
194.  SELLER WARRANTS THAT THE PROPERTY IS EITHER DIRECTLY OR INDIRECTLY CONNECTED TO:

195.  **CITY SEWER** ☐ **YES** ☒ **NO / CITY WATER** ☐ **YES** ☒ **NO**

196.  **SUBSURFACE SEWAGE TREATMENT SYSTEM**

197.  SELLER CERTIFIES THAT SELLER ☐ **DOES** ☒ **DOES NOT** KNOW OF A SUBSURFACE SEWAGE TREATMENT
      *(Check one.)*
198.  SYSTEM ON OR SERVING THE PROPERTY. (If answer is **DOES**, and the system does not require a state permit,
199.  see *Subsurface Sewage Treatment System Disclosure Statement*.)

200.  **PRIVATE WELL**

201.  SELLER CERTIFIES THAT SELLER ☐ **DOES** ☒ **DOES NOT** KNOW OF A WELL ON OR SERVING THE
      *(Check one.)*
202.  PROPERTY. (If answer is **DOES** and well is located on the property, see *Well Disclosure Statement*.)

203.  THIS PURCHASE AGREEMENT ☐ **IS** ☒ **IS NOT** SUBJECT TO A *SUBSURFACE SEWAGE TREATMENT SYSTEM*
      *(Check one.)*
204.  *AND WELL INSPECTION CONTINGENCY ADDENDUM.* (If answer is **IS**, see attached *Addendum*.)

205.  IF A WELL OR SUBSURFACE SEWAGE TREATMENT SYSTEM EXISTS ON THE PROPERTY, BUYER HAS
206.  RECEIVED A *WELL DISCLOSURE STATEMENT* AND/OR A *SUBSURFACE SEWAGE TREATMENT SYSTEM*
207.  *DISCLOSURE STATEMENT*.

208.  **NOTICE REGARDING PREDATORY OFFENDER INFORMATION:** Information regarding the predatory offender
209.  registry and persons registered with the predatory offender registry under MN Statute 243.166 may be obtained
210.  by contacting the local law enforcement offices in the community where the property is located or the Minnesota
211.  Department of Corrections at (651) 361-7200, or from the Department of Corrections web site at
212.  www.corr.state.mn.us.

213.  **HOME PROTECTION/WARRANTY PLAN:** Buyer and Seller are advised to investigate the various home protection/
214.  warranty plans available for purchase. Different home protection/warranty plans have different coverage options,
215.  exclusions, limitations and service fees. Most plans exclude pre-existing conditions. *(Check one.)*

216.  ☐  A Home Protection/Warranty Plan will be obtained and paid by ☐ **BUYER** ☐ **SELLER** to be issued by _____
      *(Check one.)*

217.  _____ at a cost not to exceed $ _____ .

218.  ☒  There will be no Home Protection/Warranty Plan as part of this Agreement.

MN:PA-5 (10/12)

Instanet
Forms

**PURCHASE AGREEMENT**

219. Page 6   Date _____ 10/11/12 _____

220. Property located at _____ 3210 Upton Ave N. Minneapolis, MN 55412 _____ .

---

221. **NOTICE**

222. _____ Mikaya Griffin _____   is ☐ Seller's Agent ☒ Buyer's Agent ☐ Dual Agent ☐ Facilitator.
(Licensee)              (Check one.)

223. _____ TCC Property Services LLC _____
(Real Estate Company Name)

224. _____ (Licensee) _____   is ☐ Seller's Agent ☐ Buyer's Agent ☐ Dual Agent ☐ Facilitator.
(Check one.)

225. _____ (Real Estate Company Name) _____

226. **THIS NOTICE DOES _NOT_ SATISFY MINNESOTA STATUTORY AGENCY DISCLOSURE REQUIREMENTS.**

---

227. **DUAL AGENCY REPRESENTATION**

228. **PLEASE CHECK _ONE_ OF THE FOLLOWING SELECTIONS:**

229. ☐ Dual Agency representation _DOES NOT_ apply in this transaction. _Do not complete lines 230-246._

230. ☐ Dual Agency representation _DOES_ apply in this transaction. _Complete the disclosure in lines 231-246._

231. Broker represents both the Seller(s) and the Buyer(s) of the property involved in this transaction, which creates a
232. dual agency. This means that Broker and its salespersons owe fiduciary duties to both Seller(s) and Buyer(s). Because
233. the parties may have conflicting interests, Broker and its salespersons are prohibited from advocating exclusively for
234. either party. Broker cannot act as a dual agent in this transaction without the consent of both Seller(s) and Buyer(s).
235. Seller(s) and Buyer(s) acknowledge that
236.    (1) confidential information communicated to Broker which regards price, terms, or motivation to buy or sell will
237.        remain confidential unless Seller(s) or Buyer(s) instructs Broker in writing to disclose this information. Other
238.        information will be shared;
239.    (2) Broker and its salespersons will not represent the interest of either party to the detriment of the other; and
240.    (3) within the limits of dual agency, Broker and its salespersons will work diligently to facilitate the mechanics of
241.        the sale.

242. With the knowledge and understanding of the explanation above, Seller(s) and Buyer(s) authorize and instruct Broker
243. and its salesperson to act as dual agents in this transaction.

244. Seller _____   Buyer _____

245. Seller _____   Buyer _____

246. Date _____   Date _____

---

247. OTHER: _____

248.

249.

250.

251.

252.

253.

254.

255.

256.

257.

MN:PA-6 (10/12)



**PURCHASE AGREEMENT**

258.  Page 7   Date _____ 10/11/12 _____

259.  Property located at _____ 3210 Upton Ave N, Minneapolis, MN 55412 _____ .

260.  **ADDENDA AND PAGE NUMBERING:** Attached addenda are a part of this Purchase Agreement.
261.  Enter total number of pages of this Purchase Agreement, including addenda, on line two (2) of page one (1).

262.  **NOTE:** Disclosures and optional Arbitration Agreement are not part of this Purchase Agreement and should
263.  not be part of the page numbering.

264.  I, the owner of the property, accept this Purchase
265.  Agreement and authorize the listing broker to withdraw
266.  said property from the market, unless instructed
267.  otherwise in writing.
268.  I have reviewed all pages of this Purchase Agreement.

I agree to purchase the property for the price and on
the terms and conditions set forth above
**I have reviewed all pages of this Purchase
Agreement.**

269.  ☐ If checked, this Purchase Agreement is subject to
270.  attached *Counteroffer Addendum.*

271.  X _____ 10-12-12   X _____ 10/18/12
          (Seller's Signature)        (Date)           (Buyer's Signature)                    (Date)

272.  X _Steven Meldahl_             X _____ Margo Geffen- Manager _____
          (Seller's Printed Name)                      (Buyer's Printed Name)

273.  X _Married_                    X _____
          (Marital Status)                             (Marital Status)

274.  X _____              X _____
          (Seller's Signature)        (Date)           (Buyer's Signature)                    (Date)

275.  X _____              X _____
          (Seller's Printed Name)                      (Buyer's Printed Name)

276.  X _____              X _____
          (Marital Status)                             (Marital Status)

277.  **FINAL ACCEPTANCE DATE:** _____ **The Final Acceptance Date**
278.  is the date on which the fully executed Purchase Agreement is delivered.

279.          **THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYER(S) AND SELLER(S).**
280.          **IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

281.  I ACKNOWLEDGE THAT I HAVE RECEIVED AND HAVE HAD THE OPPORTUNITY TO REVIEW THE *ARBITRATION*
282.  *DISCLOSURE AND RESIDENTIAL REAL PROPERTY ARBITRATION AGREEMENT,* WHICH IS AN OPTIONAL,
283.  VOLUNTARY AGREEMENT AND IS NOT PART OF THIS PURCHASE AGREEMENT.

284.  **SELLER(S)** _____     **BUYER(S)** _____

285.  **SELLER(S)** _____     **BUYER(S)** _____

MN:PA-7 (10/12)




### ADDENDUM TO PURCHASE AGREEMENT
### DISCLOSURE OF INFORMATION ON
### LEAD-BASED PAINT AND LEAD-BASED
### PAINT HAZARDS

This form approved by the Minnesota Association of REALTORS®,
which disclaims any liability arising out of use or misuse of this form.
© 2009 Minnesota Association of REALTORS®, Edina, MN

| | | |
|---|---|---|
| 1. | Date | 10/11/12 |
| 2. | Page | |

3. Addendum to Purchase Agreement between parties, dated _____ 10/11/12 ;

4. pertaining to the purchase and sale of the property at ___2210___ ___Upton Ave N_____

5. __Minneapolis, MN  55412_____

---

6. **Section I: Lead Warning Statement**

7. *Every buyer of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified*
8. *that such property may present exposure to lead from lead-based paint that may place young children at risk of*
9. *developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including*
10. *learning disabilities, reduced intelligence quotient, behavioral problems and impaired memory. Lead poisoning also*
11. *poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide*
12. *the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's*
13. *possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible*
14. *lead-based paint hazards is recommended prior to purchase.*

---

15. **Seller's Disclosure** *(initial)*

16. _____ _____ (a) Presence of lead-based paint and/or lead-based paint hazards.
17. (Check one below.)

18. ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing
19. (explain):

20. _____

21. ☐ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

22. _____ _____ (b) Records and reports available to the seller.
23. (Check one below.)

24. ☐ Seller has provided Buyer with all available records and reports pertaining to lead-based paint
25. and/or lead-based paint hazards in the housing *(list documents below)*:

26. _____

27. ☒ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards
28. in the housing.

---

29. **Buyer's Acknowledgment** *(initial)*

30. X _MMB_ _____ (c) Buyer has received copies of all information listed under (b) above.

31. _MMB_ _____ (d) Buyer has received the pamphlet, *Protect Your Family from Lead in Your Home.*

32. _MMB_ _____ (e) Buyer has (check one below):

33. ☐ Received a 10-day opportunity (or mutually agreed-upon period) to conduct a risk assessment
34. or inspection for the presence of lead-based paint and/or lead-based paint hazards *(if checked,*
35. *see Section II on page 2)*; or

36. ☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-
37. based paint and/or lead-based paint hazards.

---

TLX:SALE-1 (8/09)

Instanet
Forms

## ADDENDUM TO PURCHASE AGREEMENT
## DISCLOSURE OF INFORMATION ON
## LEAD-BASED PAINT AND LEAD-BASED
## PAINT HAZARDS

38. Page _____

39. Property located at   3210   Upton Ave N                    Minneapolis, MN   55412  .

40. **Real Estate Licensee's Acknowledgement** *(initial)*

41. _____   (f)   Real estate licensee has informed Seller of Seller's obligations under 42 U.S.C. 4952(d) and is aware
42.            of licensee's responsibility to ensure compliance.

43. **Certification of Accuracy**
44. The following parties have reviewed the information above and certify, to the best of their knowledge, that the information
45. provided by the signatory is true and accurate.

46. _____   10-12-12        _____   10/12/2012
    (Seller)                    (Date)          (Buyer) Margo Geffen - Manager   (Date)

47. _____   _____         _____   _____
    (Seller)                    (Date)          (Buyer)                     (Date)

48. _____   _____         _____   10/12/2012
    (Real Estate Licensee) Mikeya   Griffin   (Date)   (Real Estate Licensee)   (Date)

49. **Section II; Contingency** *(Initial only if first box under (e) is checked in Buyer's Acknowledgment above.)*
50. This contract is contingent upon a risk assessment or an inspection of the property for the presence of lead-
51. based paint and/or lead-based paint hazards to be conducted at Buyer's expense. The assessment or inspection
52. shall be completed within ☐ ten (10) ☐ _____ calendar days after Final Acceptance of the Purchase Agreement.
    ———————————————— (Check one.) ————————————————
53. This contingency shall be deemed removed, and the Purchase Agreement shall be in full force and effect, unless Buyer or
54. real estate licensee representing or assisting Buyer delivers to Seller or real estate licensee representing or assisting
55. Seller, within three (3) calendar days after the assessment or inspection is timely completed, a written list of the specific
56. deficiencies and the corrections required, together with a copy of any risk assessment or inspection report. If Seller
57. and Buyer have not agreed in writing within three (3) calendar days after delivery of the written list of required corrections
58. that: (A) some or all of the required corrections will be made; or (B) Buyer waives the deficiencies; or (C) an adjustment to
59. the purchase price will be made; this Purchase Agreement is canceled. Buyer and Seller shall immediately sign a
60. *Cancellation of Purchase Agreement* confirming said cancellation and directing all earnest money paid hereunder to
61. be refunded to Buyer. It is understood that Buyer may unilaterally waive deficiencies or defects, or remove this contingency,
62. providing that Buyer or real estate licensee representing or assisting Buyer notifies Seller or real estate licensee
63. representing or assisting Seller of the waiver or removal, in writing, within the time specified.

TLX:SALE-2 (6/09)



## SELLER'S DISCLOSURE ALTERNATIVES
### 133.    Page 4

134.  J.  **SELLER'S STATEMENT:**
135.      *(To be signed at time of listing.)*
136.      Seller(s) hereby authorizes any licensee(s) representing or assisting any party(ies) in this transaction to provide
137.      a copy of this Disclosure to any person or entity in connection with any actual or anticipated sale of the property.

138.  _____    _10-12-12_    _____
      (Seller)                (Date)        (Seller)                    (Date)

139.  K.  **BUYER'S ACKNOWLEDGEMENT:**
140.      *(To be signed at time of purchase agreement.)*
141.      I/We, the Buyer(s) of the property, acknowledge receipt of this SELLER'S DISCLOSURE ALTERNATIVES form
142.      and agree to the seller's disclosure option selected in this form. I/We further agree that no representations regarding
143.      material facts have been made, other than those made in this form.
          Twin Cities Community Land Bank LLC

144.  _____    _____
      (Buyer)  margo Geffen - manage  (Date)   (Buyer)              (Date)

145.  L.  **SELLER'S ACKNOWLEDGEMENT:**
146.      *(To be signed at time of purchase agreement.)*
147.      AS OF THE DATE BELOW, I/we, the Seller(s) of the property, state that the material facts are the same, except
148.      for changes as indicated below, which have been signed and dated.

149.

150.

151.

152.

153.

154.

155.  _____    _____    _____
      (Seller)                (Date)        (Seller)                    (Date)

156.          LISTING BROKER AND LICENSEES MAKE NO REPRESENTATIONS AND ARE
157.          NOT RESPONSIBLE FOR ANY CONDITIONS EXISTING IN THE PROPERTY.

MN:SDA-4 (10/12)

**SELLER'S DISCLOSURE ALTERNATIVES**
This form approved by the Minnesota Association of REALTORS®,
which disclaims any liability arising out of use or misuse of this form.
© 2012 Minnesota Association of REALTORS®, Edina, MN

1.  Date _____

2.  Page 1 of _____ pages

3.  Property located at __ 3210   Upton Ave N _____ ,

4.  City of _____ Minneapolis _____ , County of _____ Hennepin _____ , State of Minnesota.

5.  **NOTICE:** Sellers of residential property, with limited exceptions, are obligated to satisfy the requirements of MN Statutes
6.  513.52 through 513.60. **To comply with the statute, Seller must provide either a written disclosure to the**
7.  **prospective Buyer (see *Seller's Property Disclosure Statement*) or satisfy one of the following two options:**

8.  *(Select one option only.)*

9.  1) ☐  **QUALIFIED THIRD-PARTY INSPECTION:** Seller shall provide to prospective Buyer a written report that
10.     discloses material information relating to the real property that has been prepared by a qualified third party.
11.     "Qualified third party" means a federal, state or local governmental agency, or any person whom Seller or
12.     prospective Buyer reasonably believes has the expertise necessary to meet the industry standards of practice
13.     for the type of inspection or investigation that has been conducted by the third party in order to prepare the
14.     written report.

15.     **Seller shall disclose to prospective Buyer material facts known by Seller that contradict any information**
16.     **that is included in a written report, or material facts known by Seller that are not included in the**
17.     **report.**

18.     The inspection report was prepared by _____

19.     _____ ,

20.     and dated _____ , 20 _____ .

21.     Seller discloses to Buyer the following material facts known by Seller that contradict any information included
22.     in the above referenced inspection report.

23.

24.

25.

26.

27.     Seller discloses to Buyer the following material facts known by Seller that are not included in the above
28.     referenced inspection report.

29.

30.

31.

32.

33.  2) ☒  **WAIVER:** The written disclosure required may be waived if Seller and prospective Buyer agree in writing. Seller
34.     and Buyer hereby waive the written disclosure required under MN Statutes 513.52 through 513.60.

35.     **NOTE:** If both Seller and prospective Buyer agree, in writing, to waive the written disclosure required under
36.     MN Statutes 513.52 through 513.60, Seller is not obligated to disclose ANY material facts of which Seller
37.     is aware that could adversely and significantly affect the Buyer's use or enjoyment of the property or any
38.     intended use of the property, other than those disclosure requirements created by any other law. Seller is
39.     not obligated to update Buyer on any changes made to material facts of which Seller is aware that could
40.     adversely and significantly affect the Buyer's use or enjoyment of the property or any intended use of the
41.     property that occur, other than those disclosure requirements created by any other law.

42.     **Waiver of the disclosure required under MN Statutes 513.52 through 513.60 does not waive, limit or**
43.     **abridge any obligation for Seller disclosure created by any other law.**

MN:SDA-1 (10/12)



**SELLER'S DISCLOSURE ALTERNATIVES**
44.    Page 2

45.  Property located at _____ **3210 Upton Ave N, Minneapolis, MN 55412** _____ .

46.  **OTHER REQUIRED DISCLOSURES:**
47.  **NOTE:**     In addition to electing one of the above alternatives to the material fact disclosure, Minnesota law also
48.          requires sellers to provide other disclosures to prospective buyers, such as those disclosures listed below.
49.          Additionally, there may be other required disclosures by federal, state, local or other governmental entities
50.          that are not listed below.

51.  **A. SUBSURFACE SEWAGE TREATMENT SYSTEM DISCLOSURE:** (A subsurface sewage treatment system
52.      disclosure is required by MN Statute 115.55.) *(Check appropriate box.)*

53.      Seller certifies that Seller ☐ **DOES** ☒ **DOES NOT** know of a subsurface sewage treatment system on or serving
                                   *(Check one.)*

54.      the above-described real property. (If answer is **DOES**, and the system does not require a state permit, see
55.      *Subsurface Sewage Treatment System Disclosure Statement.*)

56.      ☐ There is a subsurface sewage treatment system on or serving the above-described real property.
57.          *(See Subsurface Sewage Treatment System Disclosure Statement.)*

58.      ☐ There is an abandoned subsurface sewage treatment system on the above-described real property.
59.          *(See Subsurface Sewage Treatment System Disclosure Statement.)*

60.  **B. PRIVATE WELL DISCLOSURE:** (A well disclosure and Certificate are required by MN Statute 103I.235.)
61.      *(Check appropriate box.)*

62.      ☒ Seller certifies that Seller does not know of any wells on the above-described real property.

63.      ☐ Seller certifies there are one or more wells located on the above-described real property.
64.          *(See Well Disclosure Statement.)*

65.      Are there any wells serving the above-described property that are not located on the property?     ☐ Yes ☐ No

66.      Contaminated Well: Is there a well on or serving the property that contains contaminated water?     ☐ Yes ☐ No

67.      To your knowledge, is the property in a Special Well Construction Area?     ☐ Yes ☐ No

68.      Comments: _____

69.  **C. VALUATION EXCLUSION DISCLOSURE:** (Required by MN Statute 273.11, Subd. 16)

70.      There ☐ **IS** ☐ **IS NOT** an exclusion from market value for home improvements on this property. Any valuation
                 *(Check one.)*
71.      exclusion shall terminate upon sale of the property, and the property's estimated market value for property tax purposes
72.      shall increase. If a valuation exclusion exists, Buyers are encouraged to look into the resulting tax
73.      consequences.

74.      Additional comments: _____

75.      _____

76.  **D. METHAMPHETAMINE PRODUCTION DISCLOSURE:**
77.      (A methamphetamine production disclosure is required by MN Statute 152.0275, Subd. 2 (m).)

78.      ☒ Seller is not aware of any methamphetamine production that has occurred on the property.

79.      ☐ Seller is aware that methamphetamine production has occurred on the property.
80.          *(See Methamphetamine Production Disclosure Statement.)*

81.  **E. NOTICE REGARDING AIRPORT ZONING REGULATIONS:** The property may be in or near an airport safety zone
82.      with zoning regulations adopted by the governing body that may affect the property. Such zoning regulations are
83.      filed with the county recorder in each county where the zoned area is located. If you would like to determine if such
84.      zoning regulations affect the property, you should contact the county recorder where the zoned area is located.

MN:SDA-2 (10/12)

**SELLER'S DISCLOSURE ALTERNATIVES**
85.      Page 3

86.    Property located at _____ 3210 Upton Ave N, Minneapolis, MN 55412 _____.

87.  **F.  NOTICE REGARDING CARBON MONOXIDE DETECTORS:**
88.       MN Statute 299F.51 requires Carbon Monoxide Detectors to be located within ten (10) feet from all sleeping
89.       rooms. Carbon Monoxide Detectors may or may not be personal property and may or may not be included in the
90.       sale of the home.

91.  **G.  WATER INTRUSION AND MOLD GROWTH:** Recent studies have shown that various forms of water intrusion
92.       affect many homes. Water intrusion may occur from exterior moisture entering the home and/or interior moisture
93.       leaving the home.

94.       Examples of exterior moisture sources may be
95.       •   improper flashing around windows and doors,
96.       •   improper grading,
97.       •   flooding,
98.       •   roof leaks.

99.       Examples of interior moisture sources may be
100.      •   plumbing leaks,
101.      •   condensation (caused by indoor humidity that is too high or surfaces that are too cold),
102.      •   overflow from tubs, sinks or toilets,
103.      •   firewood stored indoors,
104.      •   humidifier use,
105.      •   inadequate venting of kitchen and bath humidity,
106.      •   improper venting of clothes dryer exhaust outdoors (including electrical dryers),
107.      •   line-drying laundry indoors,
108.      •   houseplants—watering them can generate large amounts of moisture.

109.      In addition to the possible structural damage water intrusion may do to the property, water intrusion may also result
110.      in the growth of mold, mildew and other fungi. Mold growth may also cause structural damage to the property.
111.      Therefore, it is very important to detect and remediate water intrusion problems.

112.      Fungi are present everywhere in our environment, both indoors and outdoors. Many molds are beneficial to humans.
113.      However, molds have the ability to produce mycotoxins that may have a potential to cause serious health problems,
114.      particularly in some immunocompromised individuals and people who have asthma or allergies to mold.

115.      To complicate matters, mold growth is often difficult to detect, as it frequently grows within the wall structure. If you
116.      have a concern about water intrusion or the resulting mold/mildew/fungi growth, you may want to consider having
117.      the property inspected for moisture problems before entering into a purchase agreement or as a condition of your
118.      purchase agreement. Such an analysis is particularly advisable if you observe staining or any musty odors on the
119.      property.

120.      For additional information about water intrusion, indoor air quality, moisture or mold issues, please view the
121.      Minnesota Association of REALTORS® Desktop Reference Guide at www.mnrealtor.com.

122.  **H.  NOTICE REGARDING PREDATORY OFFENDER INFORMATION: Information regarding the predatory**
123.       **offender registry and persons registered with the predatory offender registry under MN Statute 243.166**
124.       **may be obtained by contacting the local law enforcement offices in the community where the property is**
125.       **located or the Minnesota Department of Corrections at (651) 361-7200, or from the Department of Corrections**
126.       **web site at www.corr.state.mn.us.**

127.  **I.  ADDITIONAL REQUIRED DISCLOSURES (e.g., city, municipal, county):**

128.

129.

130.

131.

132.

MN:SDA-3 (10/12)



## AMENDMENT TO PURCHASE AGREEMENT
This form approved by the Minnesota Association of REALTORS®,
which disclaims any liability arising out of use or misuse of this form.
© 2006 Minnesota Association of REALTORS®, Edina, MN

1. Date _2/7/2013_

2. The undersigned parties to a Purchase Agreement, dated _10/11/12_ _____, 20_____, pertaining to
3. the purchase and sale of the property at _3210 Upton Avenue North, Minneapolis MN 55411_ _____
4. _____
5. hereby mutually agree to amend said Purchase Agreement as follows:

6. _Buyer and Seller agree to amend the closing date to on or before March 29th, 2013_
7. _____
8. _____
9. _____
10. _____
11. _____
12. _____
13. _____
14. _____
15. _____
16. _____
17. _____
18. _____
19. _____
20. _____
21. _____
22. _____
23. _____
24. _____
25. _____
26. _____
27. _____
28. _____
29. _____

30. All other terms and conditions of the Purchase Agreement to remain the same.

Twin Cities Community Land Bank LLC

31. _____  2-8-13      _____  2/7/2013
    (Seller)           (Date)      (Buyer)            (Date)

32. _____  _____    _____  _____
    (Seller)           (Date)      (Buyer)            (Date)

33. **THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYERS AND SELLERS.**
34. **IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

MN-AMD (8/06)

WEBForms™ Now/2006

Exhibit B

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:                                                              BKY No.: 12-46965
                                                                              Chapter 11

**Steven F. Meldahl,**

    **Debtor.**

_____

## CERTIFICATE OF SERVICE
_____

I hereby certify that on February 14, 2013, I caused a copy of the **Notice of Hearing and Motion to Sell Real Estate Free and Clear of Liens, Claims and Encumbrances; and Proposed Order** to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

    US Trustee: ustpregion12.mn.ecf@usdoj.gov, ecfbkup@comcast.net
    Orin J. Kipp: okipp@wilfordgeske.com, mboelen@wilfordgeske.com;
                lfrancis@wgcmn.com
    Michael E. Ridgway:  mike.ridgway@usdoj.gov
    Rebecca S. Holschuh:  Rebecca.holschuh@co.hennepin.mn.us,
                barb.besta@co.hennepin.mn.us,
                Suzanne.ryan@co.hennepin.mn.us
    Rebecca S. Christensen:  rchristensen@eckberglammers.com
    Thomas Lallier:  ECF_Notices@foleymansfield.com
    Richard L. Leighton:  rick@leightonhetland.com
    Charles N. Nauen:  cnnauen@locklaw.com, jmtrieber@locklaw.com
    Minneapolis City Attorney's
        Office P Sautter:  Gregory.sautter@ci.minneapolis.mn.us
    Spencer J. Seamans:  s.seamans@gurstel.com, p.moir@gurstel.com

    I further certify that I caused a copy of the **Notice of Hearing and Motion to Sell Real Estate Free and Clear of Liens, Claims and Encumbrances; and Proposed Order** to be emailed (where indicated) and mailed by US Mail to the following:

| | | |
|---|---|---|
| Adams Pest Control<br>Box 233<br>Medina MN 55340 | Always Drains Ltd<br>135 E Golden Lake Lane<br>Circle Pines MN 55014 | JSRS Capital, LLC<br>Ryan R. Dreyer – Email:<br>RDreyey@morrisonsund.com |
| Centerpoint Energy<br>PO Box 1144<br>Minneapolis MN 55440-<br>1144 | Chubb Insurance<br>c/o Next Wave Services,<br>LLC<br>402 W Broadway #740<br>San Diego CA 92101 | City of Eden Prairie<br>8080 Mitchell Road<br>Eden Prairie MN 55344 |

| | | |
|---|---|---|
| Condo & HOA Law Group<br>2030 Mc Gregor Blvd.<br>Fort Myers FL 33901 | Country Club Rentals, Inc.<br>8961 Daniels Center Dr.,<br>#407<br>Fort Myers FL 33912 | Colonial Country Club<br>9181 Independence Way<br>Fort Myers FL 33913 |
| David Shulman Law Office<br>1005 W. Franklin Ave, #3<br>Minneapolis MN 55405 | Dave's Floor Sanding<br>1451 - 92nd Lane NE<br>Blaine MN 55449 | Laboratory Corp of America<br>Box 2240<br>Burlington NC 27216 |
| Latoya Martin<br>3850 Bryant Avenue N<br>Minneapolis MN 55412 | Les James Roofing<br>941 W 80th Street<br>Bloomington MN 55420 | Macy's<br>PO Box 689195<br>Des Moines IA 50368-9195 |
| National Exemption Svc<br>Inc.<br>PO Box 9020<br>Clearwater FL 33758 | Park Nicollet<br>Customer Service<br>3800 Park Nicollet Blvd<br>St. Louis Park MN 55416-2699 | Peak Heating & Cooling Inc.<br>7810 Park Drive<br>Chanhassen MN 55317 |
| Phillip & Cantina Taylor<br>3022 Golden Valley Rd<br>Minneapolis MN 55422 | Preserve Temple Terrace<br>Condo<br>c/o Atlantic & Pacific Assoc.<br>622 Banyan Trail #150<br>Boca Raton FL 33431 | Safeco Insurance<br>c/o Brown & Joseph Ltd.<br>Box 59838<br>Schaumburg IL 60159 |
| Samuel J.H. Sigelman<br>Email:<br>ssigelman@lindquist.com | Stern Heating<br>12753 120th Avenue<br>Goodhue MN 55027 | Surface Renew<br>9637 Anderson Lakes Pkwy<br>#109<br>Eden Prairie MN 55344 |
| Steven F. Meldahl<br>18407 Bearpath Trail<br>Eden Prairie, MN 55347 | Target National Bank<br>c/o Payment Processing<br>PO Box 660170<br>Dallas TX 75266-0170 | XCel Energy<br>PO Box 9477<br>Minneapolis MN 55484-9477 |

Dated this 14th day of February, 2013.        /e/ Steven B. Nosek
                                              Steven B. Nosek, #79960
                                              2855 Anthony Lane South, Suite 201
                                              St. Anthony, MN 55418
                                              (612) 335-9171
                                              ATTORNEY FOR DEBTOR

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                        **BKY NO.:  12-46965**

**Steven F. Meldahl,**

          **Debtor.**

## ORDER

This matter came before the court on the motion to sell real estate free and clear of liens, claims and encumbrances filed by the Debtor. Appearances were as noted in the record. Based on the motion,

**IT IS ORDERED**:

1.      The Debtor's Motion is GRANTED;

2.      The Debtor is authorized to sell the property located at 3210 Upton Avenue North, Minneapolis, MN, legally described as:

> Lot 011, Block 017, Branham & Greenleafs Addition to Minneapolis, Hennepin County, State of Minnesota
> PID No.:  08-029-24-13-0179

Dated:  _____          _____
                                          Gregory F. Kishel
                                          Chief United States Bankruptcy Judge